**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIMBERLY SUE OBERLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:13-cv-00998** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.    Introduction

Plaintiff Kimberly Sue Oberley ("Oberley") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") which denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. This case comes before the Court on the parties' cross-motions for summary judgment (ECF Nos. 8, 10). Each side filed a brief in support of its motion (ECF Nos. 9, 11), and the Commission filed a response to Plaintiff's motion (ECF No. 12). The "certified copy of the transcript of the record" has also been filed as a part of the Commissioner's answer to Oberley's complaint (ECF No. 6). Accordingly, the matter is ripe for disposition.

For the reasons that follow, the Commissioner's Motion for Summary Judgment will be denied and Oberley's Motion for Summary Judgment (ECF No. 8) will be denied to the extent that she requests an award of benefits but granted insofar as she seeks a vacatur of the Commissioner's administrative decision and a remand for further proceedings.

## II.    Procedural History

Oberley protectively applied for benefits under Title II on March 21, 2011, alleging that she had become "disabled" on January 12, 2011.  R. at 12, 130.  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application on May 3, 2011.  R. at 12, 64. Oberley responded on June 9, 2011, by filing a request for an administrative hearing.  R. at 71-72.  She applied for SSI benefits on July 6, 2011.  R. at 12, 134, 144.  On March 13, 2012, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Donald M. Graffius (the "ALJ").  R. at 26.  Oberley was represented by counsel and testified at the hearing. R. at 30-45.  Timothy E. Mahler ("Mahler"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy.  R. at 45-51.  On March 26, 2012, the ALJ issued a decision in which he determined that Oberley was not "disabled" within the meaning of the Act.  R. at 12-21.

On April 27, 2012, Oberley sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. at 7-8.  The Appeals Council denied the request for review on June 3, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner in this case.  R. at 1.

On July 12, 2013, Oberley commenced this action in which she seeks judicial review of the Commissioner's decision.  (ECF Nos. 1-3).  These cross-motions for summary judgment then followed.[1]  (ECF Nos. 8 & 10).

_____

1.  The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56.  *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).  In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions."  *Sumler v. Bowen*, 656 F. Supp. 1322, 1330 (W.D. Ark. 1987).

### III.    Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).  Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard.  *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-61 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.  In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law.  That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.  To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

332 U.S. 194, 196 (1947),The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision.  *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).

IV.     **The ALJ's Decision**

In his decision, the ALJ determined that Oberley had not engaged in substantial gainful activity subsequent to her alleged onset date.  R. at 14.  Oberley was found to be suffering from "status post total left hip revision," fibromyalgia, and osteoarthritis of the left knee.  R. at 14. These impairments were deemed to be "severe" under the Commissioner's regulations.  R. at 14-15; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).  The ALJ

concluded that Oberley's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 15.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Oberley's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except is limited to occasional walking and standing, must avoid kneeling, crawling and climbing, and must be afforded the option to sit and stand during the work day, one-to-two minutes every 20 to 30 minutes or so.

R. at 15. Oberley had "past relevant work"[3] experience as a nursing assistant, a television assembler, and an electronics repairer. R. at 19, 46-47, 165, 172. Mahler testified that, under the Dictionary of Occupational Titles ("DOT"), those positions were classified as "semi-skilled"[4] jobs at the "medium,"[5] "light"[6] and "sedentary"[7] levels of exertion. R. at 46. He further stated

---

2. The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

3. "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

4. "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

5. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

6. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

that Oberley had actually performed her duties as a nursing assistant at the "very heavy"[8] level of exertion.  R. at 46-47.  Mahler made that observation because Oberley had previously testified that, as a nursing assistant, she had been expected to lift patients weighing more than one hundred pounds.  R. at 31.  In response to a question describing a hypothetical individual with the abilities and limitations contained within the ALJ's residual functional capacity assessment, Mahler testified that the described individual could not perform the duties of Oberley's prior positions.  R. at 47.  Given Mahler's testimony, it was determined that Oberley could not return to her past relevant work.  R. at 19.

Oberley was born on January 4, 1961, making her fifty years old on her alleged onset date and fifty-one years old on the date of the ALJ's decision.  R. at 30.  She was classified as a person "closely approaching advanced age" under the Commissioner's regulations.  20 C.F.R. §§ 404.1563(d), 416.963(d).  Oberley had more than a high school education[9] and an ability to communicate in English.  R. at 30, 163, 165; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5).  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Oberley could work as a labeler/marker, an office helper, a mailroom clerk, or a photocopy machine operator.  R. at 20.  Mahler's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[10]  R. at 47-48.

7.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

8.  "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more."  20 C.F.R. §§ 404.1567(e), 416.967(e).

9.  Oberley completed one year of college after graduating from high school.  R. at 30, 165.

10.  At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d

## V.        The Evidentiary Record

After graduating from high school, Oberley completed one year of college.  R. at 30, 165. She was eventually certified to work as a nursing assistant.  R. at 30.  In May 1987, Oberley started to work as a nursing assistant at Frick Hospital.  R. at 165.  She continued to work in that capacity until June 1991, when she accepted a manufacturing position with an electronics company.  R. at 165.  At some point in 1991, Oberley underwent a surgical procedure to replace her left hip.[11]  R. at 244.  The operation was performed by Dr. Dana Mears at Shadyside Hospital.  R. at 244.  In June 2008, Oberley was hired by Westmoreland Hospital to work as a "technical partner."  R. at 31, 165.  At the hearing, she described that position as being the same as that held by a nursing assistant "with some extra duties."  R. at 31.  Oberley also testified that, as a technical partner, she had been expected to lift patients weighing in excess of one hundred pounds.  R. at 31.  This testimony led Mahler to conclude that Oberley had performed her duties at the "very heavy" level of exertion.  R. at 46-47.

Throughout the end of 2010 and the beginning of 2011, Oberley experienced "significant discomfort" in her left hip.  R. at 244.  She stopped working on January 12, 2011.  R. at 164.  Dr. Christopher Bellicini, an orthopedic surgeon, examined Oberley on February 7, 2011.  R. at 244-246.  The examination left Dr. Bellicini with the impression that Oberley's replaced left hip was failing.  R. at 245.  He recommended that she undergo "a complete revision arthroplasty of the left hip."  R. at 244.  Because Oberley had neutropenia, Dr. Bellicini advised that there was "a high risk of infection."  R. at 245.  He referred Oberley to Dr. John K. Waas, a hematologist, so

---

203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

11 The surgery was apparently performed because Oberley was suffering from dysplasia.  R. at 37.

that she could take Neupogen prior to her surgery. R. at 244. Dr. Waas subsequently provided Oberley with two preoperative doses of Neupogen. R. at 250.

Dr. Bellicini surgically repaired Oberley's left hip on March 3, 2011. R. at 253-255. The procedure was performed at Westmoreland Hospital, which was Oberley's place of employment. R. at 253-255. After performing the operation, Dr. Bellicini told Dr. Waas that "there was nothing in [Oberley's left] hip that appeared to be infected." R. at 250. One day later, Dr. Waas observed that Oberley was "recovering very well from her revision surgery." R. at 250. Discussing Oberley's history of acquiring infectious diseases, Dr. Waas noted that Oberley had experienced four episodes of shingles during the previous year. R. at 251. In light of that history, Dr. Waas asserted that Oberley "would need to be evaluated" in the event that she were to start exhibiting "fevers, sweats or chills." R. at 251. Oberley was discharged from inpatient care on March 7, 2011. R. at 242. In the immediate aftermath of her discharge, she was encouraged to use a cane or walker for ambulatory purposes. R. at 243.

Oberley did not return to work. She protectively applied for Title II benefits on March 21, 2011. R. at 12, 130. Dr. Michael J. Niemiec, a nonexamining medical consultant, reviewed Oberley's medical records on behalf of the Bureau. R. at 54-62. On April 27, 2011, Dr. Niemiec predicted that Oberley would "make a satisfactory recovery" before January 12, 2012. R. at 59. He opined that, after recovering from her surgery, Oberley would be able to perform a range of "light" work involving only occasional postural maneuvers. R. at 58-59. The Bureau denied Oberley's claim on May 3, 2011. R. at 64.

On May 24, 2011, Oberley detailed her alleged functional limitations on an assessment form. R. at 405-408. Oberley insisted that she could not "sit, stand or walk for any length of time." R. at 405. Oberley further stated that the pain caused by her impairments had made it

impossible for her to remain employed. R. at 406. Additionally, Oberley reported that exercise tended to aggravate the pain associated with her fibromyalgia and complained that her pain medications were making her "very sleepy." R. at 406-407.

On June 1, 2011, Oberley returned to Dr. Bellicini's office for a follow-up examination. R. at 424. Although Oberley was not suffering from "hip or groin pain," she complained that postoperative physical therapy was exacerbating preexisting pain in her lower back. R. at 424. Dr. Bellicini adjusted Oberley's prescribed treatment regimen to incorporate "therapy modalities for [her] lumbar spine." R. at 424. In the meantime, Oberley continued to pursue benefits under the Act. She requested an administrative hearing and subsequently applied for SSI benefits. R. at 12, 134, 144.

Dr. Bellicini examined Oberley on August 3, 2011. R. at 422-423. He noted that she was "not using any assistive devices" to walk. R. at 422. Oberley complained of continuing pain in her lower back and left knee. R. at 422. While x-rays detected the presence of "some arthritis" in Oberley's left knee, Dr. Bellicini found no evidence of "severe" arthritis. R. at 422. He expressed a desire to "get [Oberley] back to work" shortly after her next appointment. R. at 423.

After receiving Oberley's request for a hearing, the ALJ asked Dr. John N. Menio to provide his opinion as to whether Oberley was statutorily "disabled." R. at 369. On August 14, 2011, Dr. Menio opined that Oberley's impairments had medically equaled Listings 1.02A and 1.03 between January 12, 2011, and July 1, 2011. R. at 360. He further stated that Oberley continued to be "restricted to sedentary work" in the aftermath of that "closed period." R. at 360. Dr. Menio asserted that Oberley could never lift or carry objects weighing more than ten pounds. R. at 361-362. He indicated that she could continuously stand or walk for only thirty minutes at a time. R. at 363. Dr. Menio also reported that Oberley could not perform postural maneuvers

or tolerate exposure to extreme cold temperatures, vibrations or unprotected heights. R. at 365-366.

In a treatment note dated September 2, 2011, Dr. Bellicini observed that Oberley was "looking to get back to work in any capacity." R. at 420. Dr. Bellicini stated that he was "going to let her go back to work without any restrictions." R. at 420. Oberley was apparently told that she could return to work one week later. R. at 421. On November 25, 2011, Dr. Bellicini asserted that Oberley was "doing remarkably well" with her repaired left hip. R. at 419.

Stephen K. Glosner ("Glosner"), a physical therapist affiliated with Commonwealth Rehabilitation and Family Practice, performed a functional capacity evaluation of Oberley on January 26, 2012. R. at 431-435. After completing the evaluation, Glosner stated that Oberley was able to perform work-related tasks at the "sedentary" level of exertion. R. at 433. Nevertheless, he noted that she had obtained passing scores on only three of the seventeen validity criteria, thereby rendering the results of the evaluation "invalid." R. at 433. Glosner reported that Oberley's "high pain rating" had "negatively impact[ed] the capabilities exhibited during the test." R. at 433. Dr. Lee J. Harmatz, Oberley's primary care physician, expressed agreement with Glosner's assessment. R. at 435.

In a written statement prepared on January 30, 2012, Dr. Waas reported that Oberley was suffering from "a chronic idiopathic neutropenia with recurrent infections." R. at 371. He pointed out that she had suffered through four episodes of shingles during the course of a single year. R. at 371. Dr. Waas expressed the view that Oberley's neutropenia had rendered it impossible for her to hold any "position in health care" involving "patient contact." R. at 373. He opined that she could not return to her previous position at Westmoreland Hospital. R. at 373.

On February 20, 2012, Dr. Bellicini stated that Oberley could not lift or carry objects weighing more than forty to fifty pounds. R. at 430. He reported that she could perform a range of "sedentary work" involving "minimal steps." R. at 430. Although Dr. Bellicini asserted that the prognosis for Oberley's left hip was "good," he predicted that she would experience worsening knee pain in the future. R. at 429.

At the hearing, Oberley suggested that Dr. Bellicini had prematurely released her to return to work at the urging of other employees of Westmoreland Hospital. R. at 34. She testified that Westmoreland Hospital had subsequently informed her that it had no position for her to fill. R. at 34. Oberley acknowledged that she was receiving unemployment compensation benefits at the time of the hearing. R. at 30-31. In order to be eligible for unemployment compensation benefits under Pennsylvania law, an individual must be "able to work and available for suitable work." 43 Pa. Stat. § 801(d)(1).

## VI. Discussion

Oberley advances several arguments in support of her applications for benefits., specifically   (ECF No. 9 at 3-4). Moreover, Oberley challenges the ALJ's findings at the third and fifth steps of the sequential evaluation process. *Id.* at 12-14. The Court must, however, first resolve a preliminary matter: which evidence may be considered for the purpose of determining whether the ALJ's decision is supported by substantial evidence.

### A. The Scope of the Record

The fourth sentence of 42 U.S.C. § 405(g) provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Because any judgment entered must be based "upon

the pleadings and transcript of the record," extrinsic evidence cannot be considered for the purpose of sentence-four review. *Matthews v. Apfel*, 239 F.3d 589, 593-594 (3d Cir. 2001). Any disposition ordered under sentence four terminates the civil action brought against the Commissioner, regardless of whether the case is remanded for further consideration of the claimant's entitlement to benefits. *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993).

The sixth sentence of § 405(g) permits a reviewing court to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). When a remand is ordered under sentence six, the reviewing court "does not rule in any way as to the correctness of the administrative determination." *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). A sentence-six remand does not terminate the civil action commenced by the claimant, since the Commissioner must proceed to determine whether "additional and modified findings of fact" should be filed with the court after reviewing the "new evidence." 42 U.S.C. § 405(g).

The statutory provision authorizing the commencement of this action permits an unsuccessful claimant to seek judicial review of "any *final decision* of the Commissioner of Social Security made after a hearing to which he [or she] was a party." 42 U.S.C. § 405(g) (emphasis added). The Supreme Court has construed this language to limit judicial review to "final decisions" denying applications for benefits.[12] *Califano v. Sanders*, 430 U.S. 99, 108

---

12. In the Social Security disability context, there are several "agency determinations" that cannot be reviewed by a court. *Bacon v. Sullivan*, 969 F.2d 1517, 1519-21 (3d Cir. 1992). For example, "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review." 20 C.F.R. §§ 404.972, 416.1472. The plain language of 42 U.S.C. § 405(h) provides that the Commissioner's findings and decisions cannot be reviewed in an action brought under 28 U.S.C. § 1331. Therefore, an unsuccessful claimant cannot invoke a federal court's "federal-question jurisdiction" to challenge agency determinations that are not subject to judicial review under the Act. *Weinberger v. Salfi*, 422 U.S. 749, 761 (1975).

(1977). When the Appeals Council grants a claimant's request for review, it can "issue[ ] its own decision" as to whether the claimant is "disabled" based on "the preponderance of the evidence." 20 C.F.R. §§ 404.979, 416.1479. In that situation, the decision rendered by the Appeals Council is the "final decision" of the Commissioner that is subject to judicial review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). When the Appeals Council denies a claimant's request for review and declines to issue its own decision, the decision rendered by the administrative law judge becomes the Commissioner's "final decision." *Id.* at 107.

The Commissioner's regulations permit a claimant to submit "new and material evidence" to the Appeals Council in support of his or her request for review. 20 C.F.R. §§ 404.970(b), 416.1470(b). Any such evidence accepted by the Appeals Council becomes "a part of the administrative record" that must be included with the Commissioner's answer to a complaint filed in a subsequent civil action seeking judicial review. *Eads v. Secretary of the Dept. of Health & Human Services*, 983 F.2d 815, 816-17 (7th Cir. 1993). The record in this case indicates that Exhibit 15F—medical records dated October 3, 2008 to April 17, 2012 from various sources—was presented to the Appeals Council while Oberley's request for review was being considered. R. at 4-5, 438-465. Thus, the documentary evidence contained within that exhibit was never before the ALJ.[13] R. at 29.

When the Appeals Council grants a claimant's request for review and issues its own decision as to whether he or she is "disabled," judicial review of the Commissioner's "final decision" must account for the entire administrative record, including the "new and material

---

13. Exhibits 1A through 13F were admitted into evidence at the hearing. R. at 29. Exhibit 14F contains only a single document demonstrating that a cane was prescribed for Oberley. R. at 436-437. At the conclusion of the hearing, Oberley's attorney suggested that he wanted to submit evidence pertaining to that issue. R. at 52. The documents listing the exhibits submitted to the Appeals Council do not make reference to Exhibit 14F. R. at 4-5. The Court assumes that Exhibit 14F was presented to the ALJ at some point during the thirteen days falling between the administrative hearing and the rendering of his decision.

evidence" first presented in support of the claimant's request for review. *Eads*, 983 F.2d at 816-17; *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Oberley's request for review was, however, denied by the Appeals Council. Thus, the ALJ's decision became the Commissioner's "final decision." *Sims*, 530 U.S. at 107.

As our court of appeals has explained, a plaintiff in Oberley's situation could rely on the additional evidence accepted by the Appeals Council only for the purpose of seeking a sentence-six remand. *Matthews v. Apfel*, 239 F.3d 589, 592-95 (3d Cir. 2001). Oberley does not explain why she failed to procure the evidence contained within Exhibit 15F at a time when it could have been considered by the ALJ, and, therefore, she cannot satisfy the "good cause" requirement of sentence six. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011). The Court's review under sentence four can account only for the evidence that was before the ALJ at the time of his decision.[14] *Matthews*, 239 F.3d at 593. Accordingly, the documents found in Exhibit 15F will not be considered for the purpose of determining whether the Commissioner's "final decision" in this case is "supported by substantial evidence." 42 U.S.C. § 405(g).

## B. The issue of *Per Se* Disability.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or

---

14. Several federal Courts of Appeals have reached a contrary conclusion. *Brewes v. Commissioner of Social Security Administration*, 682 F.3d 1157, 1163 (9th Cir. 2012); *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262-1267 (11th Cir. 2007); *Higginbotham v. Barnhart*, 405 F.3d 332, 336-337 (5th Cir. 2005); *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992); *Wilkins v. Secretary, Dept. of Health & Human Services*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). Nonetheless, this Court is bound by the holding in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001).

her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Although Dr. Niemiec considered Oberley's impairments under Listing 1.02, he predicted that she would "make a satisfactory recovery" before January 12, 2012. R. at 57, 59. Dr. Menio opined that Oberley's impairments had medically equaled Listings 1.02A and 1.03 during a "closed period" beginning on January 12, 2011, and ending on July 1, 2011. R. at 360. At the conclusion of the hearing, Oberley's attorney argued that the criteria applicable under those Listings had been satisfied. R. at 51. At the third step of the sequential evaluation process, the ALJ concluded that Oberley was not *per se* disabled without discussing Listings 1.02A and 1.03. R. at 15.

A claimant attempting to establish the existence of a disability under Listings 1.02A and 1.03 must demonstrate that his or her impairments result in an "inability to ambulate effectively." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 1.02A, 1.03. An individual cannot ambulate effectively if he or she is unable to walk without using hand-held assistive devices that limit the functioning of *both* upper extremities. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b(1). Consequently, a claimant can satisfy the "ineffective ambulation" criterion by establishing his or her "inability to walk without the use of a walker, two crutches or two canes." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b(2).

Oberley testified that she had used a walker between her operation on March 3, 2011, and July 2011. R. at 41. She further stated that, after July 2011, she had continued to use a cane in her right hand to stabilize her knee and keep pressure off of her back. R. at 41. Dr. Menio's opinion that Oberley's impairments had not equaled Listings 1.02A and 1.03 after July 1, 2011, was evidently premised on the fact that, from that day forward, Oberley had been able to walk with a single cane rather than with a walker. R. at 360.

A claimant seeking benefits under the Act must demonstrate that both his or her medically determinable impairment (or combination of impairments) and his or her inability to work have lasted (or are expected to last) for the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-22 (2002). In light of Oberley's testimony confirming that she had stopped using her walker in July 2011, it appears that she cannot make a showing of equivalence under Listings 1.02A and 1.03 based on her "use of a hand-held assistive device." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b(1). Nonetheless, a showing of ineffective ambulation can be made in other ways. "The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b(2). In order to ambulate effectively, an individual must be able to "walk a block at a reasonable pace on rough or uneven surfaces." *Id.*

Before performing the operation on Oberley's left hip, Dr. Bellicini warned that the procedure could result in "leg length abnormalities." R. at 253. Oberley testified that the surgery on her hip had worsened the condition of her left knee. R. at 33, 37-39. She explained that knee replacement surgery would eventually be necessary, but that her neutropenia had rendered it unsafe for the procedure to be performed at that time. R. at 38-39. Despite Oberley's

specific reliance on Listings 1.02A and 1.03, the ALJ articulated no findings relating to Oberley's ambulatory abilities. R. at 15. Instead, he merely stated that her impairments did not meet or medically equal "the criteria of any listed impairment." R. at 15. Such a "conclusory statement" is simply "beyond meaningful judicial review." *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119 (3d Cir. 2000). Because the ALJ's opinion does not "provide a sufficient framework of reasoning" for his finding at the third step of the process, his decision must be vacated. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007).

### C. The Effect of Oberley's Neutropenia on her Ability to Work

Dr. Waas provided treatment for Oberley's neutropenia. R. at 244. On January 30, 2012, Dr. Waas reported that Oberley was suffering from "a chronic idiopathic neutropenia with recurrent infections." R. at 371. He stated that she had experienced four episodes of shingles during the preceding year. R. at 371. Because Oberley's neutropenia made her more susceptible to infections, Dr. Waas opined that Oberley could not return to her position at Westmoreland Hospital or otherwise perform duties requiring "patient contact." R. at 373.

In his decision, the ALJ did not mention or discuss Dr. Waas' opinion. R. at 12-21. Oberley characterizes this omission as an error requiring the vacatur or reversal of the ALJ's decision. ECF No. 9 at 18. The Commissioner contends that since Oberley's claims were not denied on the ground that she could return to her past relevant work, the ALJ was under no obligation to explain the import of Dr. Waas' assessment. ECF No. 12 at 3. In the Commissioner's view, no inconsistency exists between the opinion expressed by Dr. Waas and the factual findings later made by the ALJ. *Id.*

The ALJ was not required to expressly discuss evidence that was immaterial to the factual issues in dispute. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205

(3d Cir. 2008).  Because the fourth step of the sequential evaluation process was resolved in Oberley's favor, there was no need for the ALJ to exhaustively explain his reasons for concluding that Oberley could not return to her position at Westmoreland Hospital.  R. at 19. Nevertheless, the information provided by Dr. Waas was not limited to an assertion that Oberley was unable to work as a nursing assistant.  In addition to discussing Oberley's inability to work with hospital patients, Dr. Waas described the impact of her neutropenia in a more general sense. R. at 371-372.  The ALJ never acknowledged the existence of that impairment in determining that Oberley was not disabled.  R. at 14-21.

The Act plainly provides that the Commissioner must consider the "combined effect" of a claimant's impairments in determining whether he or she is entitled to benefits.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The assessment of a claimant's residual functional capacity must account for all of his or her work-related limitations, including those which are attributable to impairments that are not deemed to be "severe" at the second step of the sequential evaluation process.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

At the hearing, Oberley testified that her neutropenia had frequently forced her to avoid contact with people.  R. at 39-40.  She also stated that her neutropenia was complicating her attempts to undergo knee surgery.  R. at 38-39.  As the record contained objective evidence of an impairment that could reasonably be expected to cause the symptoms described by Oberley, the ALJ was required to give Oberley's testimony "serious consideration."  *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993).  Oberley's subjective complaints were consistent with information supplied by Dr. Waas and Dr. Bellicini.  R. at 244-246, 250-252, 370-373.  The ALJ apparently determined that Oberley's lifting and carrying limitations would prevent her from working as a nursing assistant.  R. at 19, 46-47.  His residual functional capacity assessment

included no environmental or personal-contact limitations. R. at 15. As far as the Court can tell, the impact of Oberley's neutropenia was completely ignored.

When Oberley applied for benefits under the Act, she listed neutropenia as one of her impairments. R. at 164. Since neutropenia was specifically relied upon by Oberley as an impairment justifying an award of benefits, the ALJ was not free to disregard it without explanation. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-06 (3d Cir. 2009). Because the ALJ failed to explain why the limitations described by Dr. Waas and Oberley were not being accepted, his decision must be set aside. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003).

### D. The Proper Remedy

A judicially-ordered award of benefits is justified only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). Attempting to establish her entitlement to benefits, Oberley points out that Medical-Vocational Rule 201.14[15] would have directed a finding of disability if the ALJ had found her to be capable of performing only "sedentary" work. ECF No. 9 at 19; 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.14. The existing record does not, however, compel a finding that Oberley was limited to "sedentary" work during the relevant period of time. Dr. Niemiec expressed the view that, after a brief period of recovery, Oberley would be able to perform a restricted range of "light" work. R. at 58-59. On September 2, 2011, Dr. Bellicini told Oberley that she could "go back to work without any restrictions." R. at 420. Although Dr.

---

15. The Commissioner can rely on the Medical-Vocational Rules "to determine issues that do not require case-by-case consideration." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). Oberley alternatively relies on Rules 201.12 and 201.14. (ECF No. 9 at 19). Mahler testified that all of Oberley's prior positions had been "semi-skilled" jobs. (R. at 46). Because Oberley's past relevant work experience was "semi-skilled" in nature, the Court refers to Rule 201.14 rather than to Rule 201.12. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rules 201.12, 201.14.

Bellicini later used the adjective "sedentary" to describe the form of work that Oberley could perform, he also stated that she could lift or carry objects weighing between forty and fifty pounds. R. at 430.

Under the Commissioner's regulations, jobs are classified as being "sedentary" when "walking and standing are required occasionally *and other sedentary criteria are met*." 20 C.F.R. §§ 404.1567(a)(emphasis added), 416.967(a)(emphasis added). As a general rule, "sedentary" work involves the lifting of objects weighing no more than ten pounds. *Id.* Even though the ALJ's residual functional capacity assessment (and corresponding hypothetical question) included a sit/stand option that was not recognized by the DOT, Mahler was able to identify "light" jobs that could be performed by an individual with the abilities and limitations described by the ALJ. R. at 15, 47-49. Because the record contains evidence supporting the portion of the ALJ's decision finding Oberley to be capable of performing "light" work, the proper remedy in this case is a remand for further proceedings rather than an immediate award of benefits. *Diaz*, 577 F.3d at 504-507.

## VII. Conclusion

For the foregoing reasons, the Commissioner's decision denying Oberley's applications for DIB and SSI benefits is not "supported by substantial evidence." 42 U.S.C. § 405(g). The Commissioner's Motion for Summary Judgment (ECF No. 10) will be denied. Oberley's Motion for Summary Judgment (ECF No. 8) will be denied to the extent that it requests an award of benefits but granted insofar as it seeks a vacatur of the Commissioner's decision and a remand for further proceedings. Accordingly, the Commissioner's decision will be vacated and the case will be remanded for further consideration of Oberley's applications for DIB and SSI benefits.

The Commissioner must "reopen and fully develop the record" before determining whether Oberley is "disabled" within the meaning of the Act. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). No opinion is expressed as to whether Oberley is entitled to benefits. The Court holds only that the findings articulated by the ALJ are insufficient to sustain the Commissioner's "final decision" in this case.

An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY SUE OBERLEY,    )
    )
      **Plaintiff,**    )
    )
    **v.**    )    **2:13-cv-00998**
    )
CAROLYN W. COLVIN, ACTING    )
COMMISSIONER OF SOCIAL    )
SECURITY,    )
    )
      **Defendant.**    )

## ORDER OF COURT

AND NOW, this 30th day of May, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that Defendant's Motion for Summary Judgment (ECF No. 10) is **DENIED**; and that Plaintiff's Motion for Summary Judgment (ECF No. 8) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Decision of the Commissioner of the Social Security Administration, is hereby **VACATED** and this action is **REMANDED** to the Commissioner of Social Security for reconsideration, rehearing, and/or further administrative proceedings consistent with this Memorandum Opinion.

The Clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    E. David Harr
      Email: david@edavidharr.com
      Michael Colville
      Email: michael.colville@usdoj.gov